I.K. FRAZER, Margie P. Berger, Peggy Cothren Jasso, Michael B. Dear, Stewart M. Kenderdine, Edwin Gaston, Jr. and Janice Colley, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–721 C.

United States Court of Federal Claims.

Filed May 11, 2001.

Reissued for Publication July 13, 2001.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

WIESE, Judge.

### I

Plaintiffs are former shareholders and directors of Superior Federal Savings Bank, a now-defunct thrift institution. Their suit, a shareholder derivative action brought on behalf of the bank, alleges the breach of a government-sponsored supervisory-merger agreement as a result of the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (codified as amended in various sections of 12 U.S.C.). Specifically, plaintiffs contend that the regulatory capital requirements that FIRREA imposed on the thrift industry precluded the bank—as the successor, upon merger, of two financially threatened thrift institutions—from including the value of goodwill as an asset in satisfaction of capital adequacy standards. Because of this impairment of its capital, the bank became insolvent and subsequently was seized by federal regulators.

Plaintiffs now seek damages for breach of contract or, alternatively, just compensation under the Fifth Amendment of the United States Constitution for the taking of their property. They also assert a claim against the Federal Deposit Insurance Corporation ("FDIC") for breach of fiduciary duty. In this claim, plaintiffs contend that, in its capacity as statutory receiver, the FDIC failed to discharge its fiduciary responsibilities to the bank by: (i) causing the dismissal of a suit that the bank had brought in 1990 to enjoin the enforcement of FIRREA's disallowance of regulatory goodwill; (ii) failing to pursue a claim against the United States for breach of contract and/or taking of property; and (iii) disposing of real estate held by the bank at "fire sale" prices.

The government has moved for dismissal of the suit for lack of timeliness; plaintiffs oppose. The issues have been fully briefed and oral argument was heard on May 1, 2001. At the conclusion of the argument, the court entered a bench ruling in defendant's favor. This order formalizes that ruling.

### II

The statute of limitations applicable to suits in this court, 28 U.S.C. § 2501 (1994), provides in relevant part that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Case law identifies the time when a claim "first accrues" as the time "when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Nager Elec. Co. v. United States,* 177 Ct.Cl. 234, 368 F.2d 847, 851 (1966).

The facts in this case show that the bank was aware, at least by February 21, 1990 (the date of its filing for injunctive relief in the district court), that FIRREA had abrogated its contract right to treat goodwill as a component of regulatory capital. Assuming, for the sake of discussion, that the bank's claim actually accrued on that later date (rather than, say, on August 9, 1989—the date FIRREA was enacted, or on December 7, 1989—the date implementing regulations were issued), then pursuant to this court's six-year statute of limitations, suit should have been commenced here no later than February 20, 1995. Plaintiffs did not file their complaint, however, until November 12, 1996. Their suit, therefore, is out of time. *Ariadne Financial Servs. Pty. Ltd. v. United States,* 133 F.3d 874 (Fed.Cir.1998).

### A. Plaintiffs' Suit Does Not Relate Back to the Date of the Bank's Filing in the District Court

In an attempt to overcome the bar of the statute of limitations, plaintiffs argue that their complaint in this court relates back to the suit that the bank had filed in the district court on February 21, 1990, and is therefore timely. In support of this argument, they refer to *131 Main Street Assocs. v. Manko*, 897 F.Supp. 1507 (S.D.N.Y.1995), a case which they say stands for the proposition that late filed claims which properly relate back to timely-filed claims are not barred as long as defendants have not been prejudiced in their ability to mount a defense.

Plaintiffs are incorrect in their understanding of the decision in *131 Main Street*. The later-filed action at issue there involved an amendment to an existing complaint seeking to join a number of additional plaintiffs. The question the court had to decide was not whether the amendment would be timely but, rather, whether the joinder of additional plaintiffs would prejudice defendants. And, as to that point, the court noted that since the "added plaintiffs' claims ... are identical to those of the original plaintiffs, defendants have not been prejudiced in their ability to mount a defense." *Id.* at 1521. Hence, the amendment was allowed.

■ In their reliance on this case, plaintiffs overlook the fact that the later-initiated action at issue in *131 Main Street* involved an amendment to a *then-pending* suit. Indeed, it is only in the context of ongoing litigation that the doctrine of relation-back has any meaning. As the court explained in *Snoqualmie Tribe of Indians v. United States*, 178 Ct.Cl. 570, 372 F.2d 951 (1967), the purpose of the relation-back doctrine is intertwined with that of the statute of limitations, which it permits a moving party to circumvent. *Id.* at 960. Thus, even as statutes of limitations are intended to provide timely notice that a claim is being asserted, "the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading." *Id.* The notice requirement therefore dictates that litigation that would be time-barred if brought as an independent action cannot go forward except as an amendment to a pending suit with which it is transactionally identifiable, *i.e.*, is seen to arise out of the same conduct, transaction, or occurrence set forth in the original pleading. Because the bank's district court action was not pending when plaintiffs filed in this court, their complaint stands alone. And standing alone, it is time-barred.

### B. The Bank Was Neither a Party to nor a Third–Party Beneficiary of the Tolling Agreement Between the FDIC and the Department of Justice

■ In a further effort to avoid the bar of the statute of limitations, plaintiffs argue that they may rely upon an agreement executed between the FDIC and the Department of Justice that purports to toll the limitations period for the filing of claims arising out of the regulatory constraints imposed by FIRREA on government-sponsored supervisory-merger agreements.

The bank was not a party to this agreement and there is nothing in the text of the agreement to suggest that the bank was intended to be a third-party beneficiary of the agreement. Plaintiffs' position, therefore, is indistinguishable from the litigating position of the shareholder-plaintiffs that was considered and rejected by the court of appeals in *Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d 1304 (Fed.Cir.2000). Plaintiffs have no standing to invoke the tolling agreement on the bank's behalf.

### C. The Adverse Domination Doctrine is Inapplicable to This Case

■ Plaintiffs also seek to invoke the doctrine of "adverse domination" to toll the statute of limitations. The doctrine of adverse domination is an equitable concept that permits the tolling of the statute of limitations with respect to claims otherwise assertable by or on behalf of a corporation when, because of a conflict-of-interest or the self-dealing of its officers or directors, the corporation is without any means of discovering and pursuing its rights. As the court explained in *FDIC v. Gonzalez–Gorrondona*, 833 F.Supp. 1545, 1557 (S.D.Fla.1993), the rationale of the adverse domination theory is

grounded on three factors: (1) the corporate "wrongdoers cannot be expected to bring an action against themselves; (2) the wrongdoer's control puts the corporation in the position of a cestui of a trust and unable to make an adverse claim; and (3) the wrongdoer's control results in the concealment of causes of action from those who otherwise might be able to protect the corporation."

█ The disability to act that underlies the adverse domination theory is not a factor here. It was always open to plaintiffs to request that the FDIC initiate a breach of contract action on behalf of the bank and, failing that agency's willingness to act, to have sued the FDIC in district court, or alternatively, to have filed their shareholder derivative action in this court in a timely manner. So long as plaintiffs knew enough to alert them to the need to act on the bank's behalf, they cannot invoke the adverse domination doctrine to excuse their failure to have done so.

### D. *The Doctrine of Equitable Estoppel Does Not Preclude Defendant From Asserting a Limitations Defense*

█ Plaintiffs also contend that defendant is equitably estopped from invoking the statute of limitations as a defense in this suit because the FDIC had caused the dismissal, in 1990, of the bank's breach of contract action and thereafter failed to pursue any claim on behalf of the bank. In substance, the argument is that the government, having failed to discharge its obligations to pursue the bank's interests, should not now be permitted to raise a defense that would preclude the bank from having its day in court.

These facts do not form the basis for an equitable estoppel claim. The essence of estoppel is detrimental reliance:

> [T]he party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.

*Heckler v. Community Health Servs., Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (footnote and citation omitted).

Plaintiffs cannot successfully argue that they were misled by the FDIC's conduct. Plaintiffs were well aware, at the time the six-year statute of limitations was drawing to a close, that the FDIC had not filed suit on the bank's behalf. Nor had that agency given plaintiffs any indication that it intended to do so. Thus, like the shareholder-plaintiffs in *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279 (Fed. Cir.1999), who too confronted an FDIC seemingly unwilling to act because of an apparent conflict of interest, it was up to plaintiffs to have acted on their own to protect the bank's interest.

### E. *Plaintiffs' Contention that the FDIC Breached a Fiduciary Duty Owed to the Bank and its Shareholders Does Not State a Claim Against the United States*

As noted earlier, plaintiffs' complaint asserts, as an alternative theory of recovery, that the FDIC, acting as receiver, breached a fiduciary duty owed them as shareholders in a failed thrift. This is not a claim that falls within our jurisdiction.

To be actionable here, the claim asserted must be against the United States. The FDIC, in this context, however, is not the United States. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). Thus, as the court noted in *Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d at 1310, "[i]f the Federal Deposit Insurance Corporation has been derelict in the performance of its duties to Caguas, as the Members complain, the proper remedy would have been a suit against the Federal Deposit Insurance Corporation, not one against the United States."

### III

The derivative action that plaintiffs seek to prosecute here was filed in this court more than six years after the underlying cause of action arose. None of the theories that plaintiffs have presented would allow the court either to toll the running of the statute of limitations or otherwise to recognize in plaintiffs a right to sue after the limitations

period has run. Because plaintiffs' suit was brought out of time, it cannot be heard by this court. "A complaint barred by the statute of limitations is beyond the subject matter jurisdiction of the Court of Federal Claims." *Chandler v. United States*, No. 00–5125, 2001 WL 338141, at *2 (Fed.Cir. Apr.3, 2001).

For the reasons stated in this order, defendant's motion to dismiss is granted. The Clerk is directed to dismiss the complaint. No costs.