I.K. FRAZER, Margie P. Berger, Peggy Cothren Jasso, Michael P. Dear, Stewart M. Kenderdine, Edwin Gaston, Jr. and Janice Colley, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 01–5118.

United States Court of Appeals, Federal Circuit.

April 30, 2002.

Dennis M. Hart, Butera & Andrews, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was James J. Butera.

Brian Mizoguchi, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Deputy Assistant Attorney General; David M.

Cohen, Director; Jeanne E. Davidson, Deputy Director; and Elizabeth M. Hosford, Trial Attorney.

Before MAYER, Chief Judge, RADER, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

This is a *Winstar*-related case. The appellants (collectively "Frazer") seek review of a final decision by the United States Court of Federal Claims dismissing their complaint for lack of subject matter jurisdiction because they failed to file the complaint within the six-year statute of limitations codified at 28 U.S.C. § 2501. On appeal, the appellants concede that the complaint was not filed within the six-year limitations period, but contend that equitable considerations preclude its dismissal. Because the facts of this case fail to support the appellants' claim to an equitable exception to the jurisdictional bar imposed by § 2501, we affirm.

BACKGROUND

As with the other *Winstar*-related cases, the appellants seek to assert claims against the government stemming from the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183, and its implementing regulations. Congress enacted FIRREA in response to the savings and loan crisis of the early 1980s. The circumstances surrounding this crisis in the thrift industry are by now familiar; as they are well-documented elsewhere, we do not revisit them here. *See United States v. Winstar Corp.*, 518 U.S. 839, 843–58, 116 S.Ct. 2432, 2439–47, 135 L.Ed.2d 964 (1996); *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1376–78 (Fed.Cir.2001). We present only those facts pertinent to the present appeal.

The appellants are former shareholders and directors of a now-defunct thrift, Su-

perior Federal Savings Bank ("Superior"), who seek to assert a derivative action on Superior's behalf. In 1982, two savings and loan associations merged to form Superior. Before doing so, they informed the Federal Home Loan Bank Board ("Bank Board") of their intention to merge, with the understanding that they would employ a "purchase method" of accounting in order to comply with then-existing regulatory capital requirements. This purchase method permitted them to include goodwill as part of their capital account, and to amortize it over a forty-year period. The Bank Board approved the proposed merger. This approval resulted in the alleged *Winstar* contract. Consistently with the terms of the alleged contract, Superior recorded approximately ten million dollars of goodwill and planned to amortize it annually over a projected forty-year period.

Subsequently, in 1989 Congress enacted FIRREA. It implemented new capital requirements by, among other things, prohibiting thrifts from treating goodwill as an asset. Without the ability to count goodwill, Superior was unable to comply with the minimum capital maintenance requirements imposed by FIRREA. Superior became insolvent. On August 10, 1990, the Resolution Trust Corporation ("RTC") placed Superior into receivership for failure to meet FIRREA's requirements.

On February 21, 1990, approximately six months before federal regulators seized Superior, the thrift brought an action in the United States District Court for the Eastern District of Texas seeking to enjoin enforcement of the new capital requirements. This action alleged, among other things, the *Winstar* claims the appellants sought to assert before the Court of Federal Claims, *viz.* that the enactment and enforcement of FIRREA effected a breach of contract and a Fifth Amendment taking.

One month after the RTC took over as receiver for Superior, the RTC moved to intervene in the district court suit and to substitute itself as the plaintiff. The RTC simultaneously moved to dismiss the complaint. The district court granted RTC's motions on September 24, 1990, dismissing the complaint with prejudice. The appellants apparently did nothing to oppose the RTC's intervention and substitution as plaintiff, or the requested dismissal with prejudice.

More than six years elapsed before the appellants initiated the suit presently on appeal. They initiated this derivative suit in the Court of Federal Claims seeking to assert Superior's *Winstar* claims, on November 12, 1996. In the interim period between the enactment of FIRREA and dismissal with prejudice of Superior's district court suit, and the initiation of the present suit in the Court of Federal Claims, several events took place.

First, the FDIC negotiated two tolling agreements with the Department of Justice. The tolling agreements applied to *Winstar*-related cases in which the FDIC was the receiver for thrifts that failed due to the FIRREA's prohibition against counting goodwill as an asset. These agreements extended the statute of limitations until the *Winstar* matter had been finalized.

Second, on July 1, 1996, the Supreme Court issued its opinion in *Winstar. See United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). In *Winstar,* the Supreme Court affirmed the *en banc* determination of this court that by enacting and enforcing FIRREA, the government breached contracts with the thrifts at issue in that case. *Id.* at 859–60, 116 S.Ct. at 2447.

Third, on October 30, 1996, the appellants sent the FDIC a letter, demanding that it "reinstitute the cause of action against the United States for breach of contract and/or an uncompensated taking." The FDIC neither directly responded to the appellants' letter, nor filed suit.

After the appellants filed the present suit on November 12, 1996, the government moved to dismiss the complaint as barred by the statute of limitations. The Court of Federal Claims rejected the appellants' numerous arguments that the statute of limitations should be inapplicable in this case, and granted the government's motion. *Frazer v. United States,* 49 Fed. Cl. 734, 735 (2001).

The court reasoned that 28 U.S.C. § 2501 required the appellants to file suit within six years of the time their claim accrued. *Id.* at 735. The appellants' derivative claims accrued, at the latest, on February 21, 1990, when Superior asserted those claims in district court. *Id.* Even on that late date the appellants would have had to file the present suit no later than February 20, 1996. Because they failed to file their complaint in the Court of Federal Claims until November 12, 1996, the court determined that the appellants' suit was "out of time." *Id.* The court rejected their argument for "equitable relation-back" to the filing date of the district court suit because that suit was no longer pending. *Id.* at 736. The court also rejected the argument that the government must be equitably estopped from asserting the statute of limitations defense because the appellants failed to demonstrate misleading governmental conduct on which they relied to their detriment. *Id.* at 737. The court then concluded that because the appellants' complaint was barred by the statute of limitations, it was beyond the court's subject matter jurisdiction. *Id.* at 737–38 (citing *Chandler v. United States,* No. 00–5125, 2001 WL 338141, at *2 (Fed.Cir. Apr.3, 2001)).

Before this court, the appellants challenge the Court of Federal Claims' dis-

missal of their complaint. We possess jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

 This court reviews *de novo* all legal determinations, including a dismissal by the Court of Federal Claims for lack of jurisdiction. *Burnside–Ott Aviation Training Ctr., Inc. v. United States,* 985 F.2d 1574, 1579 (Fed.Cir.1993); *Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir. 1992). Whether equitable principles can constitute a cognizable defense to the statute of limitations codified at § 2501 is a question of law. *See Brice v. Sec'y of Health and Human Servs.,* 240 F.3d 1367, 1370 (Fed.Cir.2001) ("Whether equitable tolling is permitted under the Vaccine Act is a question of law which we review *de novo.*").

 In contrast, whether equitable relief is warranted on the circumstances of a particular case involves factual determinations, such as the presence or absence of detrimental reliance, which are entitled to deference. *See RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1462 n. 3 (noting that if the court determined that the limitations period codified at 26 U.S.C. § 6532(a) contained an implied equitable exception, "then we would have to remand this case to the Court of Federal Claims for further factual determinations ....."); *cf. Decker & Co. v. West,* 76 F.3d 1573, 1579–80 (Fed.Cir.1996) (holding that proof of detrimental reliance was necessary to avoid a time bar for failure to satisfy the 90 day limitations period codified at 41 U.S.C. § 606, but declining to remand for fact finding regarding detrimental reliance because, even if the claim were not time barred, it would fail on the merits). We review such factual determinations for clear error. *Wyatt v. United States,* 271 F.3d 1090, 1096 (Fed.Cir.2001).

## DISCUSSION

The statute of limitations applicable to suits in the Court of Federal Claims provides, in pertinent part:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

28 U.S.C. § 2501 (2000).

The appellants concede—as they must—that they failed to file their complaint within this six-year limitations period. They contend, however, that this court should reverse the dismissal of their complaint based on either of two equitable theories: first, that equitable relation-back[1] to the filing date of Superior's district court suit should apply to toll the limitations period; and second, that equitable estoppel bars the government from raising the statute of limitations as a defense. The appellants' arguments lack merit.

 Section 2501 constitutes a jurisdictional limit on the authority of the Court of Federal Claims. In *Caguas Central Federal Savings Bank v. United States,* we explained why this is so: "[I]n the Court of Federal Claims, the statute of limitations is jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act." 215 F.3d 1304, 1310 (Fed.Cir.2000) (citing 28 U.S.C. § 1491(a)(1)). As such, § 2501 must be strictly construed. *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (holding that statutes waiving sovereign immunity must be strictly construed).

---

1. The appellants' relation-back argument is not premised on Rule 15 of the Federal Rules of Civil Procedure. By its terms, Rule 15 is inapplicable because it pertains to amendments of pending complaints. *See* Fed. R. Civ. Pro. 15(c).

We have not previously determined whether § 2501 may ever be tolled or waived, or whether the government may be estopped from raising it as a defense, due to equitable considerations. *Cf. Caguas*, 215 F.3d at 1310 (declining to address whether the government may waive the statute of limitations codified in § 2501). The law regarding equitable tolling, waiver, and estoppel against the government is less than clearly settled. *Brice*, 240 F.3d at 1370 ("As we have recently noted, the Supreme Court's decisions do not speak with perfect clarity ỏn the subject of equitable tolling against the government.") (citing *Stone Container Corp. v. United States*, 229 F.3d 1345, 1352 (Fed.Cir. 2000)); *see also United States v. Locke*, 471 U.S. 84, 94, n. 10, 105 S.Ct. 1785, 1792, n. 10, 85 L.Ed.2d 64 (1985) (leaving open the general question whether principles of equitable tolling, waiver, and estoppel apply to the government in the context of a statutory filing deadline); *Bonneville Assocs. Ltd. P'ship v. Barram*, 165 F.3d 1360, 1365 (Fed.Cir.1999) (leaving open the question whether equitable tolling applies to the limitations period for challenging a contracting officer's decision under the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 *et seq.*); *Bonneville*, 165 F.3d at 1367 (Gajarsa, J., concurring) (writing separately to note the possibility that equitable tolling may apply to the CDA).

■ After *Locke*, decisions of the Supreme Court and this court have clarified, to some extent, the circumstances under which equitable exceptions to a statute of limitations may be available. The Supreme Court has held that there is a rebuttable presumption that equitable tolling is available in suits against the United States, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990),[2] but that the government may rebut the presumption of availability by demonstrating that the claims at issue are dissimilar to claims against private parties or that there is good reason to believe Congress did not want the equitable tolling doctrine to apply, *United States v. Brockamp*, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997).

Interpreting *Irwin* and *Brockamp*, this court has found the doctrine of equitable tolling potentially applicable (depending on the facts of the particular case) in the context of some statutes. *See, e.g., Bailey v. West*, 160 F.3d 1360, 1362–68 (Fed.Cir. 1998) *(en banc)* (allowing equitable tolling of time limits for appealing decisions by the Board of Veterans Appeals to the Court of Veterans Appeals). This court has held equitable tolling foreclosed in other contexts. *See Brice*, 240 F.3d at 1367–68 (holding equitable tolling unavailable for claims arising under section 16(a)(2) of the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. §§ 300aa–1 *et seq.*); *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–63 (Fed.Cir.1998) (holding, in a suit seeking a tax refund, that there is no implied equitable exception to the limitations period codified at 26 U.S.C. § 6532(a)); *Weddel v. Sec'y of Health and Human Servs.*, 100 F.3d 929, 932 (Fed.Cir.1996) (holding equitable tolling of the limitations period unavailable for claims arising under section 16(a)(1) of the Vaccine Act).

Similarly, with regard to equitable estoppel, the Supreme Court has declined to adopt a broad rule that equitable estoppel

**2.** Tolling rules may differ in suits involving waivers of a State's sovereign immunity. *See Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 122 S.Ct. 999, 1005–06, 152 L.Ed.2d 27 (2002) (questioning whether application of federal tolling rules including the *Irwin* presumption would accord with Congressional intent in suits involving waivers of State sovereign immunity).

is never available against the government. *Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 423–24, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990) (holding the doctrine of equitable estoppel unavailable in suits seeking money damages against the government where payment would contravene a statutory appropriation, but stating "[w]e leave for another day whether an estoppel claim could ever succeed against the Government"). Interpreting *Richmond,* this Court has stated that equitable estoppel is not necessarily unavailable as a matter of law where the plaintiff's claim is based upon an alleged breach of contract. *Burnside–Ott Aviation Training Ctr., Inc. v. United States,* 985 F.2d 1574, 1581 (Fed. Cir.1993). Thus, as with equitable tolling, the precise circumstances under which a claim of equitable estoppel is available against the United States are not completely settled.

■ To dispose of the present case, however, we need not determine whether equitable principles may ever toll the statute of limitations codified in § 2501 or estop the government from asserting § 2501 as a defense. There is no need to go so far because equity disfavors these claimants. As the Supreme Court has explained:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. *We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.*

*Irwin,* 498 U.S. at 96, 111 S.Ct. at 457–58 (citations omitted) (emphasis added). The enactment of FIRREA was no secret. The appellants were aware of Superior's *Winstar* claims; in fact, they caused Superior to assert those claims in district court on February 21, 1990. Even if the limitations period were somehow tolled during the time Superior's district court suit was pending, the appellants would have had to file this complaint in the Court of Federal Claims within six years after the district court granted the RTC's motion to dismiss with prejudice. The cutoff date would therefore be September 24, 1996. Instead of filing within that time, the appellants sat on their *Winstar* claims for more than six years. They failed to file the present suit until November 12, 1996. Even if it appeared that the tolling agreements might have prevented the appellants from being able to proceed with a derivative action, they had the responsibility to determine whether to attempt to bring the action in a timely fashion. *Cf. Boling v. United States,* 220 F.3d 1365, 1374 (Fed.Cir.2000) (declining to equitably toll statute of limitations even where substantive action appeared futile during the limitations period). Failure to bring the action within the limitations period was a judgment for which the appellants are responsible. They are responsible for the consequences of their judgment, including the risk that it was incorrect. Consequently, equity will not reward the appellants' lack of diligence in timely filing the present action.

■ In addition to the appellants' failure to exercise diligence, the type of governmental action necessary to invoke equitable tolling or estoppel is also plainly lacking. In the event of late-filed submissions,[3] equitable tolling is available only

---

3. Timely filed but defective submissions differ; the defect need not necessarily be due to misleading governmental conduct. *See, e.g.,*

*Irwin,* 498 U.S. at 96 and n. 3, 111 S.Ct. at 457–58 and 458 n. 3.

when the lateness is attributable, at least in part, to misleading governmental action. *See Bailey,* 160 F.3d at 1365 (noting that if the government misled the claimant into missing the filing deadline, such inducement by a government adversary may allow equitable tolling of the limitations period even absent trickery or governmental misconduct); *see also Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1346 (Fed.Cir. 1995) (noting that equitable tolling would be allowed if the government tricked the plaintiff into missing the filing deadline). The requirements for equitable estoppel are even more stringent; equitable estoppel requires affirmative governmental misconduct. *Zacharin v. United States,* 213 F.3d 1366, 1371 (Fed.Cir.2000) ("While the Supreme Court has not squarely held that affirmative misconduct is a prerequisite for invoking equitable estoppel against the government, this court has done so, *see Henry v. United States,* 870 F.2d 634, 637 (Fed.Cir.1989); *Hanson v. Office of Pers. Mgmt.,* 833 F.2d 1568, 1569 (Fed.Cir.1987), as has every other court of appeals, *see Tefel v. Reno,* 180 F.3d 1286, 1303 (11th Cir.1999) (citing cases).").

As the Court of Federal Claims correctly found, no such misleading government conduct occurred here. Rather, the only action by any governmental entity on which the appellants' estoppel claim relies is the FDIC's negotiation of the tolling agreements and failure to pursue Superior's *Winstar* claims. But, the FDIC is not the government for purposes of *Winstar* claims. *O'Melveny & Myers v. Fed. Deposit Ins. Corp.,* 512 U.S. 79, 85, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994) ("[T]he FDIC is not the United States...."). The record is devoid of allegations that the appellants' government adversary, the Department of Justice, engaged in any action that would support the imposition of an equitable exception to the statute of limitations. There are also no allegations that the FDIC and United States were in collu-

sion, or engaged in any behavior that would make the United States responsible for the conduct of the FDIC.

Moreover, even were the FDIC's conduct potentially sufficient to estop the government, the trial court found and we have no reason to question that the FDIC's conduct in this case was not affirmatively misleading. The court explained:

> Plaintiffs cannot successfully argue that they were misled by the FDIC's conduct. Plaintiffs were well aware, at the time the six-year statute of limitations was drawing to a close, that the FDIC had not filed suit on the bank's behalf. Nor had that agency given plaintiffs any indication that it intended to do so. Thus ... it was up to plaintiffs to have acted on their own to protect the bank's interest.

*Frazer,* 49 Fed. Cl. at 737. That the FDIC had negotiated tolling agreements, to which the appellants are not parties, changes nothing. The FDIC had taken no action on Superior's claim, nor had it indicated to the appellants that it intended to actively pursue the claim. In fact, the FDIC's predecessor, the RTC, had moved to dismiss Superior's claims with prejudice.

Thus, the government did not mislead the appellants into failing to initiate their action before the expiration of the limitations period. There was no action by the United States that could have reasonably misled the appellants into believing that the FDIC was pursuing Superior's *Winstar* claims. There is certainly no governmental action that could have reasonably misled the appellants into believing that the deadline for derivatively asserting Superior's *Winstar* claims in the Court of Federal Claims had been extended.

The appellants also make a plea for leniency based upon the "considerable doubt that shareholders could even file a deriva-

tive action in the Court of Federal Claims," that existed until this Court's decision in *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279 (Fed.Cir.1999). But the appellants brought this derivative suit in 1996, well before the *First Hartford* decision issued. Thus it cannot have been the absence of the *First Hartford* decision that kept them from pursuing Superior's *Winstar* claims in a timely fashion. *See also* 194 F.3d at 1295 (noting that after numerous requests to the FDIC, the plaintiffs filed the derivative suit in *First Hartford* on the final day before the limitations period expired). More importantly, it is, of course, irrelevant if litigants who actively pursued similar *Winstar* claims despite "considerable doubt" about the law were able to obtain favorable judgments. *See Boling,* 220 F.3d at 1374. In *Boling,* this court explained that although "any claim by the plaintiffs for compensation would have been difficult" under precedent existing during the limitations period, "this difficulty does not justify tolling the statute of limitations." *Id.* The same holds true here. Like the *First Hartford* plaintiffs and many other shareholders of thrifts seized for failure to meet the requirements imposed by FIRREA, the appellants could have pursued Superior's *Winstar* claims within the six-year limitations period. They did not. Section 2501 therefore bars their claims.

## IV. CONCLUSION

In conclusion, we leave for another day the question whether equitable principles may ever warrant recognizing an exception to the six-year statute of limitations codified at 28 U.S.C. § 2501. We hold that they plainly fail to justify any such exception in the present case. As the Court of Federal Claims properly concluded, the appellants' suit was "out of time." 49 Fed. Cl. at 735. Because § 2501 is a jurisdictional condition on the government's waiv-er of sovereign immunity, the dismissal for lack of subject matter jurisdiction is

*AFFIRMED.*

No costs.