**RAYTHEON COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 09–306C.**

United States Court of Federal Claims.

Filed March 22, 2012.

Reissued April 2, 2012.

approvals to export defense articles and defense services from the U.S. to the PRC).

Paul E. Pompeo, Arnold & Porter, LLP, Washington, DC, for plaintiff.

John Hugh Roberson, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant.

## ORDER AND OPINION

HODGES, Judge.

Plaintiff Raytheon Company acquired Hughes Aircraft in 1997. Among the assets and liabilities that Raytheon assumed with the purchase was sponsorship of two retirement plans from which funds had been distributed improperly. This was a tax issue that became subject to a Voluntary Compliance Resolution between Hughes and the Internal Revenue Service. The purpose and the effect of the 1998 Compliance Resolution was to settle Hughes' obligations to IRS and to preserve the plans' special tax status.[1]

The calculation of allowable, allocable, and reasonable costs that Raytheon as a government contractor could charge the Government was another issue arising from Hughes' disputed distribution of funds from the retirement plans. Raytheon had contracts with the Department of Defense. To resolve plaintiff's responsibilities as sponsor of the retirement plans, Raytheon entered an agreement with DOD that accounted for the costs that Raytheon proposed as allowable according to government cost accounting standards. The resulting Advance Agreement listed all costs that Raytheon considered chargeable to its contracts with the Department of Defense. Defendant agreed tentatively to plaintiff's proposal, provided government auditors would review the num-

---

**1.** The Voluntary Compliance Resolution, and the Advance Agreement that is discussed throughout, are separate agreements dealing with some of the same costs. The Voluntary Compliance Resolution was an agreement between plaintiff's predecessor, Hughes Aircraft, and the Internal Revenue Service. It resolved Hughes' dispute with IRS and protected the tax status of Hughes' retirement plans. The Advance Agreement between Raytheon and the Department of Defense proposed costs that Raytheon considered allowable and therefore reimbursable with other costs related to Raytheon's government contracts.

bers and that Raytheon would reimburse any costs the auditors found unallowable. Meanwhile, Raytheon could begin collecting the proposed costs from the Government on an annual basis.

Nearly ten years after defendant signed the Advance Agreement, the Government's contracting officer issued a final decision claiming that approximately $25 million in costs listed by Raytheon in the Advance Agreement were unallowable. The contracting officer demanded that Raytheon reimburse the Government the amount already collected.

Raytheon's Complaint in this court seeks a declaratory judgment that the statute of limitations had run on the contracting officer's final decision and on defendant's $25 million claim itself. Defendant's Answer included a counterclaim in contract and another identical to the contracting officer's decision. We grant plaintiff's motion for the reasons stated below.

## BACKGROUND

Raytheon acquired sponsorship of a non-bargaining retirement plan and a salaried employees excess benefit plan when it purchased Hughes Aircraft in 1997. Hughes had obtained reimbursement from the Government during the period 1983 to 1996, for various costs related to the retirement plans pursuant to government cost accounting standards. Because some payments had been made from the wrong retirement plan, the plans' tax status was threatened, and Hughes' government contracts had been under billed and underpaid. As successor in management of the plans, Raytheon adopted the Voluntary Compliance Resolution between Hughes and the Internal Revenue Service, to protect the tax status of the plans.

### 1999 Advance Agreement

Raytheon wrote to the Defense Contract Management Agency in August 1999, to explain the circumstances and nature of its costs arising from the Voluntary Compliance Resolution with the Internal Revenue Ser-

vice. It proposed a total of $105.9 million of costs related to Raytheon's contracts with DOD, for which it would seek reimbursement.

Plaintiff's letter detailed its costs by year.[2] It explained Raytheon's position that the costs were allowable, allocable, and reasonable as required by Cost Accounting Standards. Charts attached to the letter detailed yearly breakdowns of costs and an appendix contained definitions and explanations of benefits.

Raytheon entered an Advance Agreement with the Department of Defense in November 1999, to memorialize their agreement on the allowability of Raytheon's costs. The Agreement tentatively authorized $105.9 million for those purposes, and stated that the Government anticipated further review of the costs.

### 2003 First Audit Report

The Defense Contract Audit Agency issued its initial report on Raytheon's proposed costs to the Defense Contract Management Agency in November 2003. The Defense Contract Management Agency completed its assessment of the costs in March 2004, and reported its finding that $4.75 million of Raytheon's $105.9 million proposal was unallowable. Raytheon accounted to the Government for the disputed amount as required by the Advance Agreement. The Government sent an August 2004 letter to Raytheon accepting Raytheon's credit for the unallowable costs. This closed the matter according to the parties' intent.

### 2008 Second Audit Report

The Department of Defense Inspector General issued an audit report in 2007, criticizing the government audit showing that Raytheon owed less than $5 million to the Department of Defense. The Defense Contracting Audit Agency (DCAA) responded by issuing a "supplemental report" in August 2008. The report begins as follows: "This supplemental report replaces our original report dated November 25, 2003 in its entirety

---

2. Raytheon's letter summarized the costs as 1991–1998 non-qualified plan liabilities, deferred 1998–2001 non-qualified plan liabilities, settlement credit for reclassified payments, and specif-

ic out-of-pocket costs incurred by retirees. It also described forward pricing rates and amortized costs.

and incorporates the results of the reexamination of the ... costs of [$105.9 million] proposed by Raytheon...." This time, DCAA's audit of the Advance Agreement found that $25 million of the costs that Raytheon proposed in 1999 were unallowable. This was nearly nine years after the parties agreed in principle to Raytheon's costs in the Advance Agreement.

### 2008 Final Decision

A contracting officer issued a final decision in December 2008, asserting a government claim against Raytheon for the additional $25 million that defendant now considered unallowable. Raytheon had collected some of these costs from the Government pursuant to the parties' understanding as described in the 1999 Advance Agreement.[3]

## LEGAL CONSIDERATIONS

Raytheon sued in this court for a judgment declaring that the contracting officer's final decision demanding an additional $25 million was void and of no effect. According to plaintiff, that decision and the related government claim were not issued during the applicable statute of limitations. Plaintiff alleged in the alternative that defendant was bound to its 2003 DCAA audit and Defense Contract Management Agency report in response to the 1999 Advance Agreement, citing the doctrines of finality, equitable estoppel and accord and satisfaction.

Defendant answered plaintiff's Complaint asserting counterclaims for breach of contract and for the $25 million that its contracting officer had ruled was due the Government according to the second DCAA audit. Defendant's breach claim alleges that Raytheon violated the terms of the Advance Agreement by not having already credited $25 million to the Government as determined by the second audit. The other counterclaim is effectively identical to the contracting officer's final decision in 2008, restating the contracting officer's recital of unallowable costs taken from DCAA's supplemental audit in 2008.

The statute of limitations applicable to a government claim is six years. 41 U.S.C. § 7103(a)(4)(A) (formerly codified at 41 U.S.C. § 605) ("[E]ach claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim."). The key to limitations of actions is when the claims accrue. Federal Acquisition Regulations define claim accrual for government contracts as, "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred." 48 C.F.R. § 33.201.

Other legal issues arising from the arguments include whether the start of claim accrual should be delayed; once started, should the claims period be tolled for a time; application of the continuing claims doctrine; and whether defendant can benefit from the FAR Credits provision. *See* 48 C.F.R. § 31.201–5. These matters are described as they arise, below.

## DISCUSSION

Plaintiff contends that 1999 was the year in which all events had occurred to establish any cause of action that defendant might have had against Raytheon. The parties signed the Advance Agreement in November of that year, and defendant had all the financial information that it needed or would ever have to assess allowability of the costs proposed by Raytheon. Plaintiff described its costs in detail in that Agreement, and offered support for each item. Raytheon began charging those costs to the Government as contemplated by the Advance Agreement and authorized by the Department of Defense.

■ Defendant contends that its claims accrued in March 2004 at the earliest, when it completed the initial audit and assessment

---

**3.** The Advance Agreement stated that Raytheon could include all of its proposed costs in its pricing, provided that it would reimburse the Government any amounts that an audit found unallowable. The DCAA audit four years later found $4.75 million of the costs unallowable, and plaintiff reimbursed the Government accordingly.

of Raytheon's costs. Before then, it could not have determined whether Raytheon's costs were allowable; it did not reach the threshold of "knowing" that it had a claim against Raytheon. The 2004 assessment should start the statute of limitations running. In fact, the Government knew or should have known whether any of Raytheon's costs were unallowable after the Advance Agreement was signed in 1999.

To support its preferred 2004 beginning for the statute of limitations, defendant points to language in the 1999 Advance Agreement that contemplated a government audit of Raytheon's proposed costs.[4] It notes that the Advance Agreement required Raytheon to credit to the Government any costs found to be unallowable. However, defendant completed such an audit in 2004. The 2004 audit ended a process that began with the Advance Agreement in 1999. The 2004 audit report, filed within the statute of limitations, showed that plaintiff owed the Government nearly $4.75 million, which Raytheon agreed to pay. That resolved the matter.

### Accrual Suspension Doctrine

■ The beginning of a limitations period normally may not be delayed by the parties to a government contract. The Accrual Suspension Doctrine excepts only those situations in which one party has "concealed its acts with the result that [the other party] was unaware of their existence[,] or [where] ... its injury was 'inherently unknowable' at the time the cause of action accrued." *RAM Energy, Inc. v. United States,* 94 Fed.Cl. 406, 411 (2010) (quoting *Ingrum v. United States,* 560 F.3d 1311, 1315 (Fed.Cir.2009)). Defendant has not framed its argument in such terms, however, and we have no evidence that plaintiff concealed its intentions. Nothing about the provisions of the Advance Agreement were inherently unknowable to the Government.

### FAR Credits Provision

The FAR Credits provision requires that a party credit the Government with any costs that were reimbursed by another party. 48 C.F.R. § 31.201–5 ("The applicable portion of any income, rebate, allowance, or other credit relating to any allowable cost and received by or accruing to the contractor shall be credited to the Government either as a cost reduction or by cash refund."). The Government contends that a settlement agreement between Raytheon and Hughes compensated Raytheon for costs related to its purchase of Hughes Aircraft, and that plaintiff is seeking those same costs from the Government. Government claims based on the FAR Credits provision could not have accrued until defendant knew or had reason to know that Raytheon received compensation from Hughes in accordance with such a settlement agreement.

Defendant complains that Raytheon has refused to turn over records related to its assertion that plaintiff might have obtained from Hughes some of the money it is now attempting to recover from the Government. It seeks equitable tolling of any limitations that otherwise would apply so long as plaintiff denies it access to Raytheon's records. According to defendant, Raytheon has cited a confidentiality agreement and the attorney-client privilege to justify its refusal to release the documents.[5]

■ Equitable tolling is an exception similar to accrual suspension in that it addresses instances of unfairness where misconduct by a party is evident; it requires a showing of compelling justification amounting to misconduct. *See Frazer v. United States,* 288 F.3d

---

4. Defendant suggests that the Agreement's provisions anticipating an audit delayed the statute of limitations. The Advance Agreement could not postpone accrual of the claim, however. Contracting parties cannot establish a statute of limitations longer than that set forth in the Contract Disputes Act, where the Government is a party. *See* 48 C.F.R. § 33.206(b) ("The contracting officer shall issue a written decision on any Government claim initiated against a contractor within 6 years after accrual of the claim, unless the

contracting parties agree to a shorter time period."). Thus, parties may set an shorter limitations period, but not a longer one.

5. The Government has not explained why it did not file a motion to compel such records or otherwise challenge plaintiff's efforts to protect this information. Given the circumstances, such a request for assistance from the court likely would have obtained important attention.

1347, 1353–54 (Fed.Cir.2002) (holding that equitable tolling may apply where a party has been induced or tricked by its adversary's misconduct into permitting a filing deadline to pass).

■ Raytheon has represented to the court that none of the funds it received through settlement agreements with Hughes compensated plaintiff for costs that it now seeks from the Government. Defendant has no evidence of the contents of the settlement agreement, but only speculation. Moreover, defendant's FAR Credits allegations have not been the subject of a contracting officer's final decision, and defendant has not pled a FAR Credits claim in this case.[6]

Defendant's suggestion that plaintiff has not cooperated in discovery about the settlement is not sufficient to invoke equitable tolling where it has neither alleged wrongdoing by Raytheon nor sought assistance from the court. The Government has not met the stringent standards required for equitable tolling.

### Continuing Claims Doctrine

The statute of limitations does not bar claims for costs that Raytheon submitted within six years of the 2008 final decision, defendant contends, as compared with claims for costs paid before 2002. The reason is, the costs were actual, rather than projected, and Raytheon submitted the costs on an annual basis. Defendant's claims accrued with each of Raytheon's annual certified claims, defendant urges. This is a continuing claims theory. *See, e.g., Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed.Cir.1997) (explaining that the continuing claims doctrine applies where a plaintiff's claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages").

Plaintiff responds that the timing of Raytheon's claims and defendant's payments is irrelevant to the statute of limitations analysis because continuing claims must be capable of being broken down into a series of independent and distinct events or wrongs. Raytheon charged the Government for its costs based on the Advance Agreement, covering one set of operative facts pursuant to a single event.

The Government alleges the continuing claims doctrine in an attempt to bypass its statute of limitations problem. While Raytheon submitted a certified claim to the Government each year, each was a result of one claim based on the Advance Agreement. *Gray Personnel, Inc.*, ASBCA No. 54652, 06–2 BCA ¶ 33,378 (2006) ("[A] claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim." (quoting *Brown Park Estates–Fairfield Dev. Co.*, 127 F.3d at 1456)). Defendant knew about plaintiff's claimed costs in 1999; no distinct facts or events distinguished one year from the next.

### CONCLUSION

Defendant conducted two audits of plaintiff's proposed costs. The first audit, contemplated by the Advance Agreement and completed within the statute of limitations, reduced Raytheon's allowable costs by approximately $5 million. Raytheon reimbursed the Government the amount already collected. The second audit, begun and completed outside the statute of limitations, apparently in response to pressure created by criticism from the Inspector General, using financial information identical to that used by the first auditors, found that the amount due the Government was $25 million. According to the DCAA, the second audit "replaces our original report dated November 25, 2003 in its entirety. . . ."

---

**6.** The contracting officer's 2008 final decision mentions the FAR Credits provision and the possibility that Raytheon owes the Government amounts that Raytheon obtained from Hughes, but that aspect of the decision did not allege a sum certain and was not intended to be a government claim. *See* 48 C.F.R. § 2.101 ("Claim means a written demand . . . by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract."). If the contracting officer intended to file a government claim based on Raytheon's settlements with Hughes, chances are defendant would have had the same statute of limitations problem; Raytheon's settlements occurred in 2001.

Defendant had been aware of all the information on which it based the $25 million government claim for nine years before the contracting officer issued his decision in 2008. The decision conflicted dramatically with results of the first audit, issued in 2004, which used information identical to that employed by the second set of auditors in 2007.[7] The only event occurring after defendant signed the Advance Agreement in 1999, and before the 2008 contracting officer's final decision, was the Inspector General's report criticizing DCAA's $5 million first audit.

The $25 million government claim in this proceeding is barred by the Contract Disputes Act's six-year statute of limitations.[8] Plaintiff's motion for judgment declaring that the contracting officer issued his final decision beyond the statute of limitations of the Contract Disputes Act is GRANTED. All other pending motions are moot and therefore DENIED.

This Opinion and Order is filed under seal. No later than March 30, counsel will advise the court of any remaining issues, including when or whether this Opinion may be unsealed. Counsel will submit redactions, if applicable, on or before March 30, 2012.

IT IS SO ORDERED.

---

7. The 1999 Advance Agreement and its attachments contained everything that defendant needed to know about Raytheon's proposed costs. No new material was added through 2004, when defendant contends that the statute began to run, at the earliest. The first DCAA audit and plaintiff's repayment occurred in 2003 and 2004, within the statute of limitations; the matter was closed then.

8. *See* 41 U.S.C. § 7103(a)(4)(A); *see also McDonnell Douglas Services, Inc.*, ASBCA No. 56568, 10–1 BCA ¶ 34,325 (2009) (holding that a contracting officer's decision was time-barred under the CDA).