**FORMER EMPLOYEES OF SONOCO PRODUCTS CO., Plaintiff–Appellant,**

v.

**Elaine CHAO, Secretary of Labor, Defendant–Appellee.**

No. 03–1557.

United States Court of Appeals, Federal Circuit.

DECIDED: June 18, 2004.

Lynn S. Preece, Baker & McKenzie, of Chicago, IL, argued for plaintiff-appellant. With her on the brief was Bart M. McMillan.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Victoria L. Strohmeyer, Trial Attorney.

Before MAYER, Chief Judge, BRYSON, and LINN, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Chief Judge MAYER.

LINN, Circuit Judge.

A group of former employees of Sonoco Products Company ("Sonoco") appeals from the dismissal of its untimely-filed claim by the United States Court of International Trade. *Former Employees of Sonoco Prods. Co. v. United States Sec'y of Labor*, 273 F.Supp.2d 1336 (CIT 2003). Because the Court of International Trade did not err in determining that the appellants were neither diligent nor misled by government agents and, thus, were not eligible for equitable tolling, we affirm.

## BACKGROUND

Following Sonoco's closure of a plant in North Carolina, it filed a petition on behalf of the company's workers under the North American Free Trade Agreement–Transitional Adjustment Assistance Act ("NAFTA–TAA"). Dorothy Fail ("Fail") was one of these workers. During the spring and early summer of 2002, Fail made a series of visits to the local state unemployment office to look for work and to maintain her unemployment benefits. *Sonoco*, 273 F.Supp.2d at 1339. She inquired during these visits about the status of the petition Sonoco had filed and alleged that she was told that the office would be notified of the decision and would subsequently communicate it to her "during one of her visits."

The Department of Labor ("agency") denied the petition; the result was published in the Federal Register on May 17, 2002. *Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance*, 67 Fed. Reg. 35,140 (Dep't Labor May 17, 2002). Fail was apparently informed of the agency's denial of the petition on July 16, 2002, on her third visit to the unemployment office after the result was published. *Sonoco*, 273 F.Supp.2d at 1341. Fail then researched her options and on August 26, 2002, along with other workers, filed a claim in the Court of International Trade. This claim was filed 101 days after the final determination was published in the Federal Register. *Id.* at 1338. The Court of International Trade noted that 19 U.S.C. § 2395(a) prescribes that workers aggrieved by a denial of a NAFTA–TAA petition may challenge the agency's determination "within sixty days after notice of such determination."[1] The court held that the deadline was not subject to equitable tolling because Fail had not been diligent, nor had she been misled by government officials into filing late. Accordingly, the court dismissed for lack of subject matter jurisdiction. *Id.* at 1342.

## ANALYSIS

### A. Standard of Review

The parties disagree as to the standard of review applicable to the issues present-

---

1. In addition, 28 U.S.C. § 2636(d) provides that a "civil action" filed to contest the agency's final determination "is barred unless commenced in accordance with the rules of the Court of International Trade within sixty days after the date of notice of such determination." 28 U.S.C. § 2636(d) (2000).

ed in this appeal. Appellants, citing *Frazer v. United States,* 288 F.3d 1347, 1351 (Fed.Cir.2002), argue that whether a statute is subject to equitable tolling is a legal determination reviewed de novo, while application of the equitable tolling doctrine in a particular case is reviewed for clear error. On the other hand, the agency, quoting *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997), argues that the dismissal of a complaint for lack of jurisdiction is a question of law reviewed de novo by this court. While the parties apparently agree that the question of whether equitable tolling applies to a statute is a question of law, they apparently disagree as to the appropriate standard of review for whether Fail is entitled to equitable tolling under the facts in this record.

We have had the opportunity to address the standard of review in several prior equitable tolling cases. In *Leonard v. Gober,* 223 F.3d 1374 (Fed.Cir.2000), we considered equitable tolling in an appeal from the United States Court of Appeals for Veterans Claims ("Veterans Court"). In *Leonard* we concluded that to reverse the Veterans Court would require consideration of the various facts adduced to determine whether the appellant's failure to timely file was due to her own neglect. We also noted that this required the court to "judge the accuracy of the facts found by the lower court." *Id.* at 1376. Because the evaluation of factual findings of the Veterans Court and the application of the law of equitable tolling to the facts are beyond our jurisdiction in an appeal from the Court of Appeals for Veterans Claims under 38 U.S.C. § 7292, we dismissed the appeal. *Id.*

In *Jaquay v. Principi,* 304 F.3d 1276, 1288 (Fed.Cir.2002) (en banc), another appeal from the Veterans Court, we considered the narrow issue of "whether the misfiling within the [agency] of a motion for reconsideration tolls the Rosler limitations period until the initial [Board of Veterans Appeals] decision is abated by the [Board of Veterans Appeals'] receipt of the motion." We held that such a misfiling tolls the limitations period as a matter of law. We went on to state explicitly that we were not applying law to facts; rather, we concluded that "our holding resolves a contested interpretation of the Veterans Court's jurisdictional statute, 38 U.S.C. § 7266, and its relationship to the regulation directed to the filing of a motion for BVA reconsideration, 38 C.F.R. § 20.1001." *Id.* at 1289.

In two subsequent veterans cases, we resolved similar issues without dismissing for lack of jurisdiction. In *Santana–Venegas v. Principi,* we held

> as a matter of law that a veteran who misfiles his or her notice of appeal at the same [regional office] from which the claim originated within the 120–day judicial appeal period of 38 U.S.C. § 7266, thereby actively pursues his or her judicial remedies, despite the defective filing, so as to toll the statute of limitations.

314 F.3d 1293, 1298 (Fed.Cir.2002). Again, we expressly stated that we were not applying law to fact but were resolving "whether the Veterans Court properly interpreted 38 U.S.C. § 7266(a) when it dismissed Mr. Santana–Venegas' appeal as being untimely." *Id.* Similarly, in *Bailey v. Principi,* 351 F.3d 1381, 1384 (Fed.Cir. 2003), we considered our authority to address the ultimate question of equitable tolling after deciding the appropriate standard in the context of a veteran's appeal. After discussing *Leonard, Jaquay,* and *Santana–Venegas,* we concluded that

when the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of the equitable tolling claim, this court has treated the question of the availability of equitable tolling as a matter of law that we are authorized by statute to address.

*Id.* In *Bailey,* we went on to conclude that "the Veterans Court misconstrued 38 U.S.C. § 7266(a) when it dismissed Mr. Bailey's appeal as untimely." *Id.* at 1385.

Thus, in the context of veterans cases, we have drawn a distinction between cases, such as *Jaquay, Santana–Venegas,* and *Bailey,* at one end of the spectrum where the facts are not in dispute and the selection of the appropriate standard resolves the case, and cases, such as *Leonard,* at the other end of the spectrum where application of the standard to disputed facts is necessary to determine whether the diligence requirement is met. Falling in the middle of the spectrum are cases where the facts are undisputed, but application of the appropriate standard to the undisputed facts is required. For these cases, selection of the standard does not automatically dictate the outcome.

An example of the cases in the middle of the spectrum is found in *Newell Cos. v. Kenney Manufacturing Co.,* 864 F.2d 757 (Fed.Cir.1988). In *Newell* we considered, in the patent context, whether a trial court could direct a verdict in an obviousness determination after a jury had delivered a verdict on the issue. We said:

All of our precedent holds that, where the only issue is, as here, the application of the statutory standard of obviousness (35 U.S.C. § 103) to an established set of facts, there is only a question of law to be resolved by the trial judge, and that

the trial court's conclusion on obviousness is subject to full and independent review by this court.

*Id.* at 762. Where the facts are undisputed, all that remains is a legal question, even if that legal question requires the application of the appropriate standard to the facts of a particular case. In *Newell,* we analogized the standard for a directed verdict in an obviousness determination to the standard to be applied in the context of a summary judgment motion, stating, "In that connection, we have held that where the ultimate legal conclusion of obviousness is disputed, but not the underlying facts, there is no issue of fact requiring a trial, even though some facts favor obviousness, some nonobviousness." *Id.* at 763. Thus, cases falling in the middle of the spectrum, requiring application of the appropriate standard to undisputed facts, are properly questions of law reviewed de novo by this court.

We believe that the present case falls in this middle ground. Here, the court will have to consider whether, in view of all the undisputed facts in this case, Fail meets the diligence standard required for equitable tolling. The application of the diligence standard to the undisputed facts of this case presents a question of law that we review de novo.

Our resolution of this issue is not inconsistent with *Frazer.* The standard of review articulated in *Frazer* was more nuanced than appellants' portrayal. The court in *Frazer* explained that both a dismissal for lack of jurisdiction and a decision as to whether equitable principles can constitute a defense to a statute of limitations are legal determinations reviewed de novo. 288 F.3d at 1351. The court went on to explain, "In contrast, whether equitable relief is warranted on the circum-

stances of a particular case involves factual determinations, such as the presence or absence of detrimental reliance, which are entitled to deference." *Id.* In this case, however, the relevant facts are undisputed. The Court of International Trade did not make credibility determinations or weigh conflicting evidence. Thus, the deference referred to in *Frazer* is unwarranted in this case.

### B. Applicability of Equitable Tolling

■ We next address the agency's argument that the statutory provisions here, 19 U.S.C. § 2395(a) and 28 U.S.C. § 2636(d), are "timing of review" provisions rather than statutes of limitations, because they address the "time in which a person must remove from one adjudicative forum to another." *Bailey v. West*, 160 F.3d 1360, 1364 (Fed.Cir.1998) (en banc). The agency notes that the Supreme Court has held that "provisions specifying the timing of review ... are ... 'mandatory and jurisdictional,' and are not subject to equitable tolling." *Stone v. Immigration & Naturalization Serv.*, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (citing *Missouri v. Jenkins*, 495 U.S. 33, 45, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)). Therefore, the agency concludes, the Court of International Trade erred in concluding that the sixty-day period of 19 U.S.C. § 2395(a) and 28 U.S.C. § 2636(d) was subject to equitable tolling.

We disagree. First, there is not a black-and-white distinction between a timing of review provision and a statute of limitations. In *West*, this court noted that the statute the Supreme Court considered in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), which dealt with the time period in which to file an employment discrimination complaint in a federal district court after a final action of the Equal Employment Opportunity Commission, could be viewed either as a statute of limitations (on the filing of an action in a trial court) or a statute specifying the time for review (from an agency action). 160 F.3d at 1364. The same confusion is present here; both sections 2395(a) and 2636(d) could be viewed as statutes of limitations on the filing of an original action in a trial-level court of law. *See* 19 U.S.C. § 2395(a) (2000) ("[A] group of workers ... may, within sixty days after notice of [a negative] determination, *commence a civil action* in the United States Court of International Trade." (emphasis added)); 28 U.S.C. § 2636(d) (2000) ("*A civil action* contesting a final determination of the Secretary of Labor ... is barred unless *commenced* in accordance with the rules of the United States Court of International Trade within sixty days after the date of notice of such determination." (emphases added)). In contrast, the statutes the Supreme Court characterized in *Jenkins* and *Stone* as governing the timing of review involved the filing of a petition for review in an appellate court of law. In *Jenkins*, the statute at issue governed the filing of writs of certiorari to the Supreme Court, 495 U.S. at 45, 110 S.Ct. 1651, while in *Stone* the statute at issue governed the filing in a regional circuit court of a petition for review of a final deportation order by the Immigration and Naturalization Service, 514 U.S. at 390, 115 S.Ct. 1537. Given this, it is unclear that the sixty-day period of 19 U.S.C. § 2395(a) and 28 U.S.C. § 2636(d) can properly be described as setting forth the timing of review.

■ Even if we were to conclude that these statutes are timing of review provi-

sions, that conclusion alone would be insufficient to conclude that they are not subject to equitable tolling. In *West*, this court considered the issue of whether equitable tolling was applicable in a situation analogous to the present case. The statute at issue in *West*, 38 U.S.C. § 7266(a), specified that a notice of appeal of an agency decision (by the Board of Veterans Appeals) to a court (the Court of Appeals for Veterans Claims) had to be filed within 120 days. We rejected the proposition that the Supreme Court had in *Stone* laid down a strict rule that timing of review provisions were not subject to equitable tolling:

> We do not think [the "not subject to equitable tolling"] language can be read to mean that statutes specifying the time for review cannot be subject to equitable tolling because such statutes are mandatory and jurisdictional. The statute in question in *Irwin*, held to be subject to equitable tolling, is no less mandatory and jurisdictional than the one in *Stone* .... We think it reasonable to read the language at the end of *Stone* to mean that statutory provisions specifying the time for review are not subject to equitable tolling, after *Irwin*, if Congress has so expressed its intent.

*West*, 160 F.3d at 1366. The agency characterizes as dictum our conclusion in *West* that timing of review provisions are subject to equitable tolling absent contrary congressional intent. This contention is without support. In *West*, as here, the statute at issue specified the time period in which an applicant had to appeal to a court of law from a final rejection by the agency. We are constrained by our en banc precedent in *West* to conclude that there is no bright-line rule in this circuit that equitable tolling does not apply to timing of review provisions.

Nor do we accept the agency's argument that *West* rested on the paternalistic relationship between the Veterans Administration and veterans. *West* did make mention of the "particular relationship between veterans and the government," but only in the context of whether the veteran could have been misled by actions of VA employees, making his case analogous to cases in which equitable tolling would be available in private suits. *Id.* at 1365. The agency reads too much into this. It goes too far to infer from the comments in *West* that a similar paternalistic relationship would be required to make it possible for Department of Labor employees to mislead an applicant. We decline to establish a rule to that effect.

■ Finally, the agency undertakes a textual analysis of the statutes under review in search of congressional intent to bar equitable tolling. It correctly notes that 28 U.S.C. § 2636(d) provides that the court action challenging the final agency determination "is barred unless commenced in accordance with the rules of the Court of International Trade within sixty days after the date of notice." The agency sees in the "is barred" language a rebuttal of the presumption that the statutory period is subject to equitable tolling. *See Irwin*, 498 U.S. at 95–96, 111 S.Ct. 453. The Supreme Court has, however, instructed us in *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), to consider a broader range of factors in determining whether equitable tolling applies to a particular statutory period. In *Brockamp*, the Supreme Court considered "the statute's detail, its technical language, its multiple iterations of the limitations period in procedural and substantive form, its explicit inclusion of exceptions, and its underlying subject matter." *Brice v. Sec'y*

**1298**

*of Health & Human Servs.,* 240 F.3d 1367, 1372 (Fed.Cir.2001) (citing *Brockamp,* 519 U.S. at 350–52, 117 S.Ct. 849). The Court of International Trade has previously applied these factors to section 2636(d) and concluded that the 60–day period set forth in that statute is subject to equitable tolling:

> Complexity in the manner in which a statute sets forth a time limitation may be interpreted as an indication of congressional intent to deny the availability of equitable tolling. *Cf. Brockamp,* 519 U.S. at 350, 117 S.Ct. 849 (stating that fairly simple language ... can often [be] plausibly read as containing an implied equitable tolling exception); *see also Bailey,* 160 F.3d at 1365 (noting in its determination that statute under consideration was subject to equitable tolling the absence therein of highly detailed, technical, or repetitive language). Here, neither the language nor the structure of 28 U.S.C. 2636(d) is complex. As observed in a prior opinion of this court, 28 U.S.C. 2636 contains no alternative time limitations, administrative preconditions, or express tolling provisions of any kind. *See [Stone Container Corp. v. United States,* 27 F.Supp.2d 195, 197 (Ct. Intl Trade 1998)]. The corresponding provision, 19 U.S.C. 2395(a), merely reiterates the sixty-day time limit in similarly straightforward terms. In fact, none of the linguistic factors considered by other courts as evidence tending to rebut the *Irwin* presumption of equitable tolling are present here. *See, e.g., Brockamp,* 519 U.S. at 352, 117 S.Ct. 849 (detailed, technical language set forth in complicated statutory framework); *Weddel v. Secy. of Health and Human Servs.,* 100 F.3d 929, 932 (Fed. Cir.1996) (clear language creating cut-off date for filing of petition which was un-

connected to date of accrual of claim). Furthermore, the inclusion in 28 U.S.C. 2636(d) of the phrase barred unless commenced does not demonstrate a congressional intent contrary to equitable tolling. *See Irwin,* 498 U.S. at 95, 111 S.Ct. 453.

*Former Employees of Siemens Info. Communication Networks, Inc. v. Herman,* 120 F.Supp.2d 1107, 1113 (Ct. Int'l Trade 2000).

We concur with this reasoning. *Irwin* itself puts to rest the agency's chief contention that the "is barred" language of 28 U.S.C. § 2636(d) by itself rules out equitable tolling. In *Irwin,* the Supreme Court held that the mere presence of "shall be barred" language, although it makes a statute "more stringent" than it would be without such language, is not "enough to manifest a different congressional intent with respect to the availability of equitable tolling." 498 U.S. at 95, 111 S.Ct. 453. We perceive no error in the Court of International Trade's conclusion that there is no expressed congressional intent that the statutes at issue in this case should not be subject to equitable tolling. We therefore hold that equitable tolling is available in this context.

### C. Diligence

■ Appellants argue that the sixty-day period should be equitably tolled in this case because Fail acted with the requisite diligence and the agency's local agents misled her by telling her they would communicate the final results to her. In essence, appellants argue that Fail's inquiries to state officials during her visits to the unemployment office were sufficiently diligent, and the state officials misled her by not informing her that she should check the Federal Register for news of the final

determination. We do not agree and hold that the court did not err in finding that equitable tolling was not merited.

*Irwin* makes clear that equitable tolling is extended "only sparingly," and where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96, 111 S.Ct. 453. Appellants also cite our formulation in *Frazer:* "equitable tolling is available only when the lateness is attributable, at least in part, to misleading governmental action." 288 F.3d at 1353–54. Appellants' claim cannot survive either formulation. Appellants see governmental "misconduct" or at least "misleading action" in the state agency workers' failure to tell Fail of the federal publication in which the notice would be published and their failure to anticipate that she might want to appeal a negative determination and to inform her how to do that. This is an expansive view of the governmental agents' duties that we are unwilling to embrace.

In support of their argument, appellants point out that Fail made regular visits to her state employment office and inquired as to the status of the Sonoco petition. According to appellants' own version of the facts, the officials at the state employment office "explained to Ms. Fail that news concerning the decision would eventually be received at their office and that she would be informed of the decision during one of her visits." Appellant Br. at 5. The state employment office fully performed the obligation that it undertook to perform. It is undisputed that the state employment office did inform Fail of the disposition of the Sonoco petition on one of her visits. Appellants do not assert that Fail requested anything more of the state employment office. Thus, the state employment office did not mislead Fail in any way.

Appellants do not assert that they informed the state employment office that they intended to appeal or that they needed to know of the disposition within any particular timeframe. Rather, appellants assert that Fail was misled by the state employment office because the office did not take it upon itself, without request by Fail, to fully inform Fail of the publication procedures of the Department of Labor and of the implications of publication for triggering the running of the limitations period. In effect, appellants seek to impose upon the state employment office the type of affirmative obligations found in an attorney-client relationship. The government has not undertaken such a relationship with appellants, and we will not imply one under the guise of equitable tolling.

We also agree with the Court of International Trade that Fail failed to act diligently. *Sonoco*, 273 F.Supp.2d at 1341. At best, she inquired about the case while in the unemployment office three times on other business. *Id.* In *Former Employees of Quality Fabricating, Inc. v. United States Secretary of Labor*, 259 F.Supp.2d 1282, 1286 (Ct. Int'l Trade 2003), a case in which the Court of International Trade did find due diligence, the appellant "continuously" emailed the agency's regional office, checked its website daily, visited the state Department of Labor's Trade Adjustment Representative, called the agency's NAFTA–TAA office in Washington, and contacted her congressional representatives. By contrast, Fail did nothing more than inquire as to the status of the Sonoco petition. Appellants cannot now blame Fail's late filing on a government agency that was unaware of Fail's intention to appeal or of her need to be made aware of

the decision in a timely manner. We do not suggest that the high level of activity described in *Quality Fabricating* represents the minimum required for a finding of due diligence. A comparison of Fail's actions with those described in *Quality Fabricating* does, however, leave us with the conviction that the Court of International Trade's holding that she had not been diligent was correct.

## CONCLUSION

Although the sixty-day period of 19 U.S.C. § 2395(a) and 28 U.S.C. § 2636(d) is subject under appropriate circumstances to equitable tolling, the Court of International Trade's conclusions that the appellants were neither diligent nor misled by government agents, and therefore do not merit application of the doctrine, are correct. We therefore

*AFFIRM.*

MAYER, Chief Judge, dissenting.

I dissent because the court incorrectly determines that equitable tolling is not available here. The court frames the issue as whether "state officials misled [Fail] by not informing her that she should check the Federal Register for news of the final determination," or as whether the local office has an independent responsibility "to anticipate that she might want to appeal a negative determination and to inform her how to do that." *Ante* at 1298–99. If this were the issue, I would surely join the court. But this is not the issue presented and I am perplexed by the court's willing-

ness to recast the facts.* Rather, the issue is whether the local office unintentionally misled Fail into missing the deadline by telling her that it would keep her abreast of any developments regarding the workers' petition. The local office has no independent duty to keep workers informed, but, once it makes assurances to a worker as in this case, it has obligated itself to follow through.

The court's argument that the local office satisfied its obligation by eventually informing Fail that the petition was denied is also troubling. It is obvious that the local office promised to tell her the outcome of her petition in a timely manner. The court's holding to the contrary is akin to having held in *Bailey v. West,* 160 F.3d 1360 (Fed.Cir.1998) (en banc), that the regional office could have satisfied its obligation to Bailey by filing his notice of appeal even if that notice were filed outside the statutory deadline. Establishing such a precedent sends the clear message to government officials that they may shirk their duties, and thus unjustly preclude judicial review, by cleverly, yet misleadingly, telling a citizen that they will act on her behalf.

Considering the actual issue presented, Fail's actions were sufficiently diligent. Just as Bailey relied on the regional office, *id.* at 1361, Fail reasonably relied on the assurances of the local office, which outwardly appears to, and actually does, play a joint role with the federal government in the implementation of the Assistance Act. *See* 20 C.F.R. §§ 661.240, 664.330 (2004). Once she was made this promise, Fail can-

---

* The court also attempts to frame the issue as whether Fail's several visits to the local office, separately from any government conduct, constitute due diligence. *Ante* at 1298–99. ("In essence, appellants argue that Fail's in-

quiries to state officials during her visits to the unemployment office were sufficiently diligent"). This, of course, is not the issue presented on appeal either.

not be faulted for not pursuing other avenues of information. And, it is irrelevant that Fail's visits to the local office had multiple purposes. It is illogical to require independent visits to the same facility in order to establish diligence. It is true that in *Former Employees of Quality Fabricating, Inc. v. United States Secretary of Labor*, 259 F.Supp.2d 1282 (Ct. Int'l Trade 2003), which both the Court of International Trade and this court rely on, the plaintiff went to greater lengths. But she was never misinformed by government employees that they would inform her when the petition was decided.

Fail's case is similar to Bailey's in several other relevant respects. The purpose of the Assistance Act is to distribute benefits to American workers whose jobs have been shipped overseas, while the purpose of the laws Bailey invoked is to distribute benefits to veterans who have been injured during service. Both are remedial acts designed to provide much needed aid. And, just like Bailey, Fail exhibited diligence as soon as she discovered that the petition was denied. In my view, the government lulled Fail into missing the deadline for appeal and she is therefore entitled to equitable tolling. *See id.* at 1365 ("Although there is no suggestion of misconduct, such as tricking Bailey into missing the 120 day filing deadline, we nevertheless conclude that a veteran's inducement by an adversary's conduct is akin to grounds sufficient to toll a limitations period in a private suit.").