SLIP OP. 05-119

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ROGER L. INGMAN, <br><br>                  Plaintiff, <br><br>       v. <br><br> UNITED STATES SECRETARY OF AGRICULTURE, <br><br>                  Defendant. | Before: Jane A. Restani, <br>            Chief Judge <br><br><br> Court No. 05-00268 |

**OPINION**

[Defendant's motion to dismiss suit challenging Trade Adjustment Assistance for Farmers benefits denial granted.]

Dated: September 2, 2005

Roger L. Ingman, pro se plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Delfa Castillo); Jeffrey Kahn, of counsel, Office of General Counsel, Department of Agriculture, for the defendant.

Restani, Chief Judge: This matter is before the court on the government's motion to dismiss. Plaintiff Roger Ingman, appearing pro se, has orally opposed the motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ingman operated a licensed fishing operation in Alaska during the 2003 salmon season. AR at 3-4. On October 7, 2004, the United States Department of Agriculture ("USDA") announced via a press release that it was recertifying a petition for Alaska salmon

fisherman under the Trade Adjustment Assistance for Farmers program ("TAA"). <u>See</u> Press Release 0228-04, "USDA Grants Assistance to Alaska Salmon Fishermen Under Trade Adjustment Assistance Program" (October 7, 2004) [hereinafter Press Release 0228-04], <u>available at</u>, http://www.fas.usda.gov/scriptsw/PressRelease/pressrel_frm.asp. The USDA determined that increasing imports of farmed salmon contributed to a decline in the price of salmon in Alaska during the 2003 marketing period. <u>Id.</u> Thus, affected Alaska fisherman could apply for technical assistance and cash benefit for the 2005 salmon season. <u>See</u> <u>id.</u> The press release announced that "Alaska salmon license and permit holders seeking assistance must apply between October 15, 2004, and January 13, 2005." <u>Id.</u>

Subsequently, the USDA published a notice on this subject in the Federal Register. <u>See</u> <u>Trade Adjustment For Farmers</u>, 69 Fed. Reg. 60,350 (Dep't Agric. Oct. 8, 2004). In the notice, the USDA announced that "Salmon fisherman holding permits and licenses in the State of Alaska will be eligible for fiscal year 2005 benefits during a 90-day period beginning on October 15, 2004. The application period closes on January 13, 2005."[1] <u>Id.</u> The notice

---

[1] This is in accordance with 19 U.S.C. § 2401e(a)(1) (2004), which reads:

> Payment of[a] adjustment assistance under this chapter [19 USCS §§ 2401 et seq.] shall be made to an adversely affected agricultural commodity producer covered by a certification under this chapter [19 USCS §§ 2401 et seq.] who files an

then went on to give the appropriate contact information.  Id.
This information was also posted on the USDA's website.  AR at 18.
In addition, various other advertisements of benefit-availability
were published in Alaska during the relevant period.  See Letter
from U.S. Dep't of Justice (Aug. 10, 2005), Attach. 1, 2, 4, 5.

Although Ingman was eligible to apply for TAA benefits,
the USDA received his application on January 28, 2005, 15 days
after the announced deadline.  AR at 3.  Ingman admits that his
application was late, stating in his letter of appeal that he "was
unable to meet the deadline of January 13, 2005."  Letter from
Ingman (March 9, 2005), AR at 16.  In a letter dated March 1, 2005,
the USDA denied Ingman's application because it was not received by
the January 13, 2005, deadline.  Letter from USDA (March 1, 2005),
AR at 17.  Despite his tardiness in filing, Ingman argues that the
deadline should be tolled.  See Letter from Ingman, AR at 16.
Ingman alleges that his tardiness was the result of the USDA
sending his application to the incorrect address, and offers the
USDA's original letter as proof. Id. at 16–18.[2]

---

application for such assistance...

[2] A conference with plaintiff and subsequent correspondence
from the government (not contradicted by plaintiff) has confirmed
that the application Ingman received was sent three months prior
to the deadline to his daughter's  address—-an address that
Ingman had used in the past.  In addition, Ingman had received
benefits previously and presumably was personally familiar with
the program through such receipt of benefits, as well as through
the wide-spread advertising of the program.

The Government moves to dismiss based on lack of jurisdiction and failure to state a claim. For the reasons set forth below, the government's motion is granted.

## I. JURISDICTION

Pursuant to 19 U.S.C. § 2395, the Court of International Trade has exclusive jurisdiction over any action commenced to review a final determination of the Secretary of Agriculture with respect to denial of trade adjustment assistance. The USDA challenges subject matter jurisdiction under this provision on two grounds: (A) the Secretary of Agriculture did not make a determination reviewable by this court; and (B) Ingman did not exhaust his administrative remedies.

The determination of subject matter jurisdiction is a threshold inquiry. Steel Co. v. Citizens For A Better Env't, 523 U.S. 83, 94-95 (1998). Whether to grant a motion to dismiss for want of jurisdiction is a question of law. JCM, Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000).

"The party seeking to invoke this Court's jurisdiction bears the burden of proving the requisite jurisdictional facts." Former Employees of Sonoco Prods. Co. v. United States Sec'y of Labor, 273 F. Supp. 2d 1336, 1338 (CIT 2003), aff'd, 372 F.3d 1291 (Fed. Cir. 2004), reh'g en banc denied, No. 03-1557, 2004 U.S. App. LEXIS 20715 (Sept. 8, 2004) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). At the same time,

"the Court assumes 'all well-pled factual allegations are true,' construing 'all reasonable interferences in favor of the nonmovant.'" United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

**A.    The Secretary Of Agriculture Made A Reviewable Determination.**

First, the USDA argues that no reviewable determination was made by the Secretary of Agriculture ("the Secretary"). Section 2395 of title 19 of the United States Code reads in pertinent part as follows:

> [A]n agricultural commodity producer (as defined in section 2401(2) of this title) aggrieved by a determination of the Secretary of Agriculture under section 2401b of this title . . . may, within sixty days after notice of such determination, commence a civil action in the United States Court of International Trade for review of such determination.
>
> . . . .
>
> . . . The Court of International Trade shall have jurisdiction to affirm the action of . . . the Secretary of Agriculture, as the case may be, or set such action aside, in whole or in part.

19 U.S.C. § 2395 (2004) (a) & (c) (emphasis added).

The USDA argues that 19 U.S.C. § 2395 grants the Court of International Trade jurisdiction to review only "determinations" of the Secretary, and when it denied Ingman's application because of his untimely submission, it made no such determination. Def.'s Mot. To Dismiss at 6. The USDA argues that the Secretary merely

applied 19 U.S.C. § 2401e(a)(1), which allows submission of applications for only ninety days after he certifies eligibility, and thus the Secretary made no reviewable determination.  Id.

In its March 1, 2005, letter, the USDA admitted to Ingman that it had "reviewed the information that [Ingman] provided to the Farm Service Agency with [his] application and . . . made a final determination that [he was] ineligible for a cash payment."  AR at 17 (emphasis added).  Furthermore, the USDA wrote that Ingman "may request review of [the] final determination by contacting the United States Court of International Trade . . . ."  Id. (emphasis added).  It was not until its Motion to Dismiss that the USDA denied that it had made a determination.

Yet, even absent this admission, the distinction the USDA draws between a determination based on a deadline and a determination based on other characteristics is both without precedent and unconvincing.  To prohibit judicial review of an agency's application of deadlines to TAA applications would leave applicants with no method of appeal even in the face of clear agency error.  The USDA offers no explanation as to why this, and not other agency determinations, deserves absolute deference.  Therefore, as the Court of International Trade is given exclusive jurisdiction over final determinations of the Secretary of Agriculture regarding TAA applications, and the USDA has characterized its actions as a final determination, without

offering any plausible reason why they are not, this court finds that it has subject matter jurisdiction.

## B.    Ingman Exhausted His Administrative Remedies.

Second, the USDA argues that Ingman did not exhaust his administrative remedies.[3]  28 U.S.C. § 2637(d) (2000) states that "[i]n any civil action not specified in this section, the Court of international Trade shall, where appropriate, require the exhaustion of administrative remedies."

"The exhaustion doctrine requires a party to present its claims to the relevant administrative agency for the agency's consideration before raising these claims to the Court." Fabrique de Fer de Charleroi S.A. v. United States, 25 CIT 741, 743, 155 F. Supp. 2d 801, 805 (2001); see also Unemployment Comp. Comm'n of Alaska v. Aragon, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action").  A plaintiff's administrative remedies are exhausted once an agency issues its final negative determination denying his petition and allowing him to pursue judicial review in the Court of International Trade under

---

[3]  It is not clear that this ground actually goes to subject matter jurisdiction rather than failure to state a claim.  The court sees no reason to explore this issue, as plaintiff has exhausted his remedies.

19 U.S.C. § 2395(a).  See Former Employees of Quality Fabricating, Inc. v. Dep't of Labor, 343 F. Supp. 2d 1272, 1282-1283 (CIT 2004) (finding that plaintiffs had exhausted their administrative remedies sufficiently to allow judicial review under 19 U.S.C. § 2395(a) when the Department of Labor issued its final negative determination of their petition for NAFTA TAA benefits).

In the present case, the USDA argues that agency review of an application for TAA benefits was available to Ingman had he submitted his application during the specified period.  Def.'s Mot. to Dismiss at 6-7.  It argues that, because Ingman did not avail himself of this opportunity by submitting a timely application, he did not exhaust his administrative remedies, and therefore this court lacks jurisdiction to hear this case.  Id.

As previously discussed, the FAS announced in its letter to Ingman that its determination denying him TAA benefits was final.  See discussion supra at Part I.A.  Additionally, the USDA cites no additional procedure for administrative review that Ingman could pursue.  Therefore, the court concludes that Ingman exhausted his administrative remedies.

## II.  FAILURE TO STATE A CLAIM

Alternatively, the USDA argues that pursuant to Rule 12(b)(5) of this court, Ingman has failed to state a claim on which relief could be granted because he does not allege facts sufficient to make him eligible to for TAA benefits.  Although Ingman failed

to file a formal response to the USDA's motion to dismiss, the court interprets Ingman's position as follows:  Although Ingman admits he did not meet the statutory deadline for submission of his application, equity dictates that the deadline should be tolled.

## A.   Plaintiff Did Not Meet The Deadline For TAA Benefits.

The USDA argues that Ingman presents no issue of material fact.  "On a motion to dismiss for failure to state a claim, factual allegations made in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff."  Amoco Oil Co. v. United States, 23 CIT 613, 613, 63 F. Supp. 2d 1332, 1334 (1999); see also Mitchell Arms, Inc. v. United States, 7 F.3d 212, 215 (Fed. Cir. 1993).  "Dismissal is proper only 'where it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief.'" Amoco Oil Co., 23 CIT at 613, 63 F. Supp. 2d at 1334 (quoting Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1565 (Fed. Cir. 1988)).

The USDA argues that there is no issue of material fact because Ingman admits to having been unable to meet the January 13th deadline, a prerequisite for the USDA to review an application for TAA.  The USDA made a similar argument before this court in Deane v. United States Sec'y of Agric., No. 05-0020 (CIT May 17, 2005) (unpublished order) (dismissing complaint with prejudice). In Deane, as here, the plaintiff was an Alaska fisherman seeking review of a negative final determination by the USDA on his

application for TAA benefits.  See Deane, Def.'s Mot. to Dismiss (March 19, 2005), at 4.   The USDA received the plaintiff's application for TAA benefits on May 17, 2004, almost five months after the announced January 20, 2004 deadline.  Id.  Although the plaintiff  alleged that he already completed an application with another government agency, which was lost, he offered no proof of that fact.  See Deane, Pl.'s Resp. (Apr. 23, 2005).  This court granted the USDA's motion to dismiss.  See Deane, Order (May 17, 2005).

Similarly, in the present case, Ingman admits in his letter of appeal that he did not meet the January 13th deadline. He does not challenge that deadline in any way.

## B.   Equitable Tolling Is Not Appropriate.

Ingman presumably argues that as  his tardiness was a result of the USDA's error in sending his application to the incorrect address, equity dictates that the court toll the deadline set forth in 19 U.S.C. § 2401e(a)(1) for submission of his application. The Supreme Court has extended the doctrine of equitable tolling to statutes of limitations for filing suits against the government. See  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95–96 (1990).

In Irwin, the Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United

States." Id. Nonetheless, "[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute." United States v. Beggerly, 524 U.S. 38, 48 (1998). Applying this standard, the court has found that equitable tolling is permitted under the TAA statute. See Former Employees of Quality Fabricating, Inc. v. United States, 259 F. Supp. 2d 1282 (CIT 2003) (denying defendant's motion to dismiss where plaintiff missed the deadline for appealing a negative determination by the Department of Labor on her request for TAA because the agency published the determination only in the federal register and not on its website, where it had told her to look).

In the present case, however, there is no evidence that USDA misled Ingman or that he used "due diligence" in either determining the existence of his claim or procuring an application. In Quality Fabricating, the court found the plaintiff acted with due diligence because the Department of Labor instructed employees that they could refer to its website or the Federal Register. Id. at 1286–87. Because the plaintiff regularly checked the Department of Labor's website and the Department of Labor failed to post her status there, the court permitted tolling of the statute of limitations. Id.

Conversely, Ingman does not allege that he made a similar effort to ascertain his status as a potential recipient of TAA benefits or that he took steps to procure an application. In the

Federal Register, the USDA provided both an email address and a phone number for applicants to request information, see Trade Adjustment for Farmers, 69 Fed. Reg. at 60,350, and in its press release, the USDA provided web addresses where applicants could obtain local contact information and the actual application, see Press Release 0228-04.  Additionally, applications were available at local Farm Service Agency service centers.  Id.  Ingman alleges only that he waited passively for the USDA to mail him his application and his response was late as a result of the USDA's error in sending what was essentially a courtesy copy to a non-current address.  These actions do not give rise to tolling of the statute.

Moreover, Ingman's status as a pro se plaintiff does not change the court's treatment of the matter.  Although leniency with respect to mere formalities normally is extended to a pro se party, when the matter concerns the time limitations placed on the consent of the United States to suit, a court may not take a similarly liberal view and set a different rule for pro se litigants.  See Kelley v. United States Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) (finding that plaintiffs who missed the sixty day deadline to appeal the Department of Labor's final determination on their application for TAA were not entitled to leniency simply because of their status as pro se applicants).

**CONCLUSION**

Because Ingman neither alleges that he satisfied the statutory filing deadline, nor do the facts warrant equitable tolling, the government's motion to dismiss for failure to state a claim is granted.


           /s/ Jane A. Restani
             Jane A. Restani
             Chief Judge


Dated:  New York, New York
        This 2nd day of September, 2005.